## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **TOMAS ALCIDES VENTURA**, | |
| Plaintiff, | |
| v. | Case No. 14-cv-01884 (CRC) |
| **L. A. HOWARD CONSTRUCTION CO.** **et al.**, | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Tomas Alcides Ventura seeks to recover from a construction company and its owner unpaid overtime compensation for his work as a concrete installer.  Despite having been served by first-class mail in accordance with the Court's Order Granting Plaintiff's Motion for Alternative Service, Defendants L. A. Howard Construction Company ("the Company") and Lazerrick A. Howard have not responded to the complaint or the Clerk's entry of default.  Ventura now seeks entry of default judgment, monetary damages, and attorneys' fees.  As Ventura has adequately demonstrated liability on the part of both defendants and established the amount of damages, the Court will grant Plaintiff's Motion for Entry of Default Judgment and enter judgment against the Company and Howard.

### I.    Background

L. A. Howard Construction Company is a Washington, D.C. corporation that employed Tomas Alcides Ventura as a concrete installer from February 1, 2011 through July 30, 2013. Compl. ¶¶ 4, 17.  Ventura alleges that he worked between forty-eight and fifty hours per week, but was never compensated at one and one-half times his regular hourly rate for the time he spent working over forty hours in a week.  Compl. ¶ 19.

L. A. Howard Construction Co. and Howard himself are employers as defined by the Fair Labor Standards Act ("FLSA"), the District of Columbia Minimum Wage Revision Act ("DCMWRA"), and the District of Columbia Wage Payment and Collection Law ("DCWPCL").[1] With this designation comes certain obligations.  As Ventura correctly notes in his complaint, id. at 3, both the federal government and the District of Columbia require that employers compensate their employees for overtime at a rate of at least one and one-half times the employee's regular hourly rate.  29 U.S.C. § 207(a); D.C. Code § 32-1003(c).  If the Company willfully failed to pay Ventura at least one and one-half times his regular hourly rate for his overtime, he is entitled to recover his unpaid compensation as well as liquidated damages.  29 U.S.C. § 216(b); D.C. Code §§ 32-1012, 32-1303.  Ventura contends that the Company never paid him his statutorily mandated overtime wage and that he is owed approximately $19,995.30 as a result.  Compl. ¶ 4.  He seeks monetary damages in the amount of $59,985.90 under the DCWPCL's treble damages provision, or, alternatively, $39,990.60 under the FLSA's liquidated damages provision, as well as attorneys' fees and costs.[2]

---

[1] Howard's ownership and control over the Company's day-to-day operations make him an employer under the relevant statutory definitions:  "The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages."  Donovan v. Agnew, 712 F.2d 1509, 1511 (1st Cir. 1983); see also Int'l Bhd. of Painters & Allied Trades Union v. George A. Kracher, Inc., 856 F.2d 1546, 1548 (D.C. Cir. 1988) (recognizing that corporate owner-officers may be held liable for unpaid wages under the FLSA); Ventura v. Bebo Foods, Inc., 738 F. Supp. 2d 1, 5 & n.2 (D.D.C. 2010) (applying analysis of individual liability under the FLSA to individual liability under the DCWPCL).

[2] Ventura also requests an unspecified amount of prejudgment interest, Mot. Default J. 10, but "it has been the practice of courts in this Circuit to deny prejudgment interest under § 216(b) when a court awards a plaintiff the maximum amount of liquidated damages," as the Court does here.  Ventura v. Bebo Foods, Inc., 738 F. Supp. 2d 8, 23 (D.D.C. 2010) (citing Lopez v. Rodriguez, 668 F.2d 1376, 1381 n.10 (D.C. Cir. 1981)).  Thus, Ventura is not entitled to any prejudgment interest.

Ventura filed suit on November 7, 2014 against L. A. Howard Construction Co. and its owner, Lazerrick A. Howard, who controlled the day-to-day operations of the Company.  Compl. ¶ 10.  The Company and Howard were served on April 14, 2015 by first-class mail, in accordance with the Court's Order Granting Plaintiff's Motion for Alternative Service.  Aff. Service of Process on L.A. Howard Construction Co.; Aff. Service of Process on Lazerrick A. Howard.  Neither responded to the complaint.  The Clerk of the Court entered default as to the Company on June 26, 2015, Clerk's Entry of Default, ECF No. 10, and as to Howard on September 4, 2015, Clerk's Entry of Default, ECF No. 12.  Ventura now moves for entry of default judgment against both the Company and Howard.

## II.      Standard of Review

Default judgment is a two-step procedure.  Lanny J. Davis & Assocs. LLC v. Republic of Equatorial Guinea, 962 F. Supp. 2d 152, 161 (D.D.C. 2013).  First, the plaintiff requests that the Clerk of the Court enter default against a party who has "failed to plead or otherwise defend."  Fed. R. Civ. P. 55(a).  Second, the plaintiff must move for entry of a default judgment.  Fed. R. Civ. P. 55(b).  Default judgment is available when "the adversary process has been halted because of an essentially unresponsive party."  Boland v. Elite Terrazzo Flooring, Inc., 763 F. Supp. 2d 64, 67 (D.D.C. 2011).  "Default establishes the defaulting party's liability for the well-pleaded allegations of the complaint."  Id.

After establishing liability, the court must make an independent evaluation of the damages to be awarded and has "considerable latitude in determining the amount of damages."  Id.  The Court may conduct a hearing to set the amount of damages.  Fed. R. Civ. P. 55(b)(2).  The Court is not required to do so, however, "as long as it ensure[s] that there [i]s a basis for the damages specified in the default judgment."  Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997).  To ensure that there is an adequate basis to determine

damages, a plaintiff must "prove [his] entitlement" to the relief requested using "'detailed affidavits or documentary evidence' on which the court may rely." Boland v. Providence Constr. Corp., 304 F.R.D. 31, 36 (D.D.C. 2014) (quoting Fanning v. Permanent Solution Indus., Inc., 257 F.R.D. 4, 7 (D.D.C. 2009)).

### III.   Analysis

Ventura argues that the Company and Howard owe him liquidated damages, attorneys' fees, and costs. The Court must determine whether entry of default judgment is appropriate and, if it is, whether Ventura is entitled to the full amount of relief he requests. In making this determination, the Court will assess the defendants' liability for the unpaid wages, the proper amount of any damages, and Ventura's request for attorneys' fees. The Court concludes that the Company and Howard breached their duties under the FLSA and the District of Columbia's wage-and-hour laws and are therefore liable to Ventura. The Court further finds that Ventura is entitled to the relief requested in the form of liquidated damages under the FLSA, as well as attorneys' fees and costs.

### A.   Liability

Ventura filed suit in November 2014 to recover the damages prescribed by the FLSA and the District of Columbia's wage-and-hour laws. Compl. 1. The Company and Howard were both served with process on April 14, 2015 by first-class mail in accordance with the Court's Order Granting Plaintiff's Motion for Alternative Service. The Clerk of the Court declared the Company to be in default on June 26, 2015, and declared Howard to be in default on September 4, 2015. Neither Defendant has responded to the complaint or the Clerk's entry of default. Because the Clerk of the Court has entered default as to both defendants, the Court accepts Ventura's well-pleaded allegations as true to determine whether the Company and Howard are liable and entry of default judgment is appropriate. Elite Terrazzo Flooring, Inc., 763 F. Supp. 2d at 67.

The District of Columbia's wage-and-hour laws provide that "[e]very employer shall pay all wages earned to his employees," D.C. Code § 32-1302, and that an employer must compensate an employee for overtime "at a rate not less than 1 ½ times the regular rate at which the employee is employed," D.C. Code § 32-1003. Similarly, the FLSA provides that, for hours worked in excess of forty hours per week, an employer must pay his employee "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a). A prevailing plaintiff in a DCWPCL or FLSA suit is entitled to unpaid wages as well as liquidated damages. See id. §§ 32-1303(4), 32-1308; 29 U.S.C. § 216(b).

Ventura has submitted a declaration on his own behalf, setting forth his hours worked and the Company's failure to make required overtime wage payments between February 2011 and July 2013. Ventura Decl. ¶¶ 1–4. Ventura explains in his declaration that, based on his regular hourly wage and his hours worked, he is owed approximately $19,995.30 in overtime compensation. Id. ¶ 4. Under these facts, the Company and Howard are liable to Ventura under both federal and District of Columbia law.

The Court may enter default judgment when a defendant makes no request "to set aside the default" and gives no indication of a "meritorious defense." Int'l Painters & Allied Trades Indus. Pension Fund v. Auxier Drywall, LLC, 531 F. Supp. 2d 56, 57 (D.D.C. 2008) (quoting Gutierrez v. Berg Contracting Inc., No. 99-3044, 2000 WL 331721, at *1 (D.D.C. Mar. 20, 2000)). Here, neither defendant has requested that the default be set aside, nor has either responded to the complaint since being served in April. The Court therefore concludes that entry of default judgment against the Company and Howard is appropriate.

B.      Damages

The next issue before the Court is the amount of damages due. "Plaintiffs must prove these damages to a reasonable certainty." Elite Terrazzo Flooring, Inc., 763 F. Supp. 2d at 68. When a

5

defendant has failed to respond, the Court must make an independent determination—by relying on affidavits, documentation, or an evidentiary hearing—of the sum to be awarded as damages.

As support for his request for damages, Ventura has submitted a declaration on his own behalf. He attests that he worked between eight and ten hours of overtime per week for the Company for approximately 130 weeks, Ventura Decl. ¶ 1, at an hourly rate of $34.19, id. ¶ 2. If Ventura worked an average of, say, nine hours of overtime per week for 130 weeks, was paid his regular hourly rate for those hours of overtime, and was thus entitled to an additional $17.10 for each of those hours, then the Company would owe Ventura approximately $20,000 in unpaid wages. Ventura's calculation of $19,995.30 in unpaid overtime wages is therefore reasonable.

In an effort to obtain liquidated damages in addition to his unpaid wages, Ventura provides an overall calculation of his total damages under the FLSA and the DCWPCL. As his employers, the Company and Howard are liable to Ventura under the FLSA "in the amount of . . . [his] unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." 29 U.S.C § 216. Ventura claims that the Company is also liable to him under the DCWPCL for "an amount equal to treble the unpaid wages." D.C. Code § 32-1303. Since D.C. law is more generous to employees on the relevant points, the Court will first assess damages under D.C. law and will not award a duplicative amount pursuant to federal law. 29 C.F.R. § 778.5 (stating that employees are entitled to higher minimums set by state law if FLSA standards are lower); Williams v. Wash. Metro Area Transit Auth., 472 F.2d 1258, 1261 (D.C. Cir. 1972) ("[W]orkers covered by state law as well as FLSA shall have any additional benefits provided by the state law.").

Ventura claims that he is eligible to receive "an amount equal to treble [his] unpaid wages," Mot. Entry Default J. 4 (quoting D.C. Code § 32-1303), but this provision of the D.C. Code was not in effect when Ventura worked for the Company. As Ventura attests, the Company employed him between February 1, 2011 and July 30, 2013. Ventura Decl. ¶ 1. However, D.C. Law 20-61, which

increased the amount of liquidated damages available by providing for trebling of the amount owed, was approved by the Mayor on August 28, 2013, became law on October 28, 2013, and finally took effect on December 24, 2013. <u>Fiscal Year 2014 Budget Support Act of 2013</u>, D.C. Law 20-61. And although an earlier-enacted emergency law put in place an identical trebling provision as early as October 1, 2013,[3] no such law was in effect at the time Ventura was employed by the Company. Ventura is therefore incorrect that the Company is liable for three times the amount of his unpaid wages.

Nonetheless, Plaintiff is correct that the FLSA's liquidated damages provision applies to his claim. As Ventura correctly observes, he is entitled to the amount of his unpaid wages as well as liquidated damages in an amount equal to those wages unless "the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act." 29 U.S.C. § 260. Neither defendant has appeared in this case or offered any evidence of good faith. Therefore, Plaintiff is entitled to liquidated damages under the FLSA.

C.   <u>Attorneys' Fees</u>

The FLSA and D.C.'s wage-and-hour laws authorize awarding attorneys' fees to employees whose rights are violated under those respective statutes. 29 U.S.C. § 216(b); D.C. Code §§ 32-

---

[3] An emergency act, A20-130, specifying the same change in the law, was passed and became effective before December 24, 2013. The Fiscal Year 2014 Budget Support Emergency Act of 2013, A20-130, became effective on October 1, 2013 and provided that "[s]ection 3(4) (D.C. Official Code § 32-1303(4)) is amended by striking the phrase 'equal to the unpaid wages' and inserting the phrase 'equal to treble the unpaid wages' in its place." <u>Fiscal Year 2014 Budget Support Emergency Act of 2013</u> § 2062(b). Pursuant to the Home Rule Act, A20-130 was effective for a 90-day period after the Mayor approved it on July 30, 2013. By its own terms, however, it was not applicable until October 1, 2013 and expired on October 28, 2013, at the end of the 90-day period. See <u>id.</u> §§ 11001, 11003 (specifying that the act "shall take effect following approval by the Mayor and shall remain in effect for no longer than 90 days"); D.C. Code § 1-233(c)(1) (emergency legislation takes effect immediately upon enactment without congressional review).

1012(c); 32-1308(b).  "The initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate."  Blum v. Stenson, 465 U.S. 886, 888 (1984).  In order to award attorneys' fees, the Court must examine the attorneys' hourly rates and the amount of time expended on the matter.  "[A]n attorney's usual billing rate is presumptively the reasonable rate, provided that the rate is in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  Kattan by Thomas v. District of Columbia, 995 F.2d 274, 278 (D.C. Cir. 1993) (quoting Blum, 465 U.S. at 895 n.11) (internal quotations omitted).  The D.C. Circuit has recently held, however, that a party seeking attorneys' fees "ha[s] the burden 'to produce satisfactory evidence—*in addition to [his] attorney's own affidavits*—that [his] requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'"  Eley v. District of Columbia, 793 F.3d 97, 104 (D.C. Cir. 2015).  After Eley, then, a court may not rely by default on a version of the Laffey Matrix without additional evidence from the party seeking attorneys' fees.[4]  Id.  Rather, a moving party must affirmatively "demonstrate that h[is] suggested rates [are] appropriate" by establishing their conformity with rates charged in the community for similar services.  Id. at 105.

In this case, Ventura seeks $7,719 in attorneys' fees for the 8.2 hours Mary C. Lombardo and 7.9 hours Jonathan Lieberman worked on this case, as well as for hours worked by two associates, one paralegal, and one legal assistant.  Ms. Lombardo has practiced law for fifteen years and charges an hourly rate of between $395 and $420.  Similarly, Mr. Lieberman has practiced law

---

[4] The Laffey Matrix is "[t]he most commonly used . . . schedule of prevailing rates . . . for lawyers who practice 'complex federal litigation.'"  Eley, 793 F.3d at 100.

for fifteen years and also charges an hourly rate of between $395 and $420. Associates Ana Rodriguez and Eduardo Garcia worked a total of 4.3 hours and charged between $225 and $290 per hour, while a paralegal worked 0.9 hours at a rate of $160 per hour and a legal assistant worked for 0.2 hours at a rate of $120 per hour. In total, the law firm Stein Sperling Bennett De Jong Driscoll PC expended 21.5 hours of time on Plaintiff's case. Ms. Lombardo's declaration provides significant detail as to the hours worked and tasks completed and indicates that work, where possible, was delegated to legal assistants to reduce costs. The Court is satisfied that Ventura has adequately justified the hours expended in this case.

The Court is nevertheless unable to determine whether the requested amount of attorneys' fees is reasonable because Ventura has not provided satisfactory evidence to demonstrate that the requested *rates* are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. "[A]ttorneys' fee matrices [are] one type of evidence that 'provide[] a useful starting point' in calculating the prevailing market rate." Eley, 793 F.3d at 100 (quoting Covington v. District of Columbia, 57 F.3d 1101, 1109 (D.D.C. 1995)). To this end, Ventura cites the "rates set forth in the Laffey Matrix for 2013-15." Mot. Default J. 10. But it is insufficient merely to provide the Court with a version of the Laffey Matrix and an attorney's declaration that she charged her client a rate in accordance with the Matrix. Id. at 104.

Ms. Lombardo's affidavit does point to awards of attorneys' fees in two similar Maryland cases, but neither fully supports the suggested rate here: between $395 and $420 for FLSA litigation by attorneys with fifteen years of experience. In Lopez v. Lawns 'R' Us, a FLSA case from 2008, the court found that a $400 hourly rate was appropriate for an attorney with 26 years of experience and that a $300 hourly rate was appropriate for an attorney with 15 years of experience. No. 07-2979, 2008 WL 2227353, at *6 (D. Md. May 23, 2008). And in Monge v. Portofino Ristorante, a FLSA case from 2010, a magistrate judge for the same court found that a $200 hourly rate was

9

appropriate for an attorney with between four and five years of experience. 751 F. Supp. 2d 789, 800 (D. Md. 2010). Without more, Ventura has not provided the Court with satisfactory evidence that the requested hourly rate constitutes the prevailing rate in this community for this type of litigation by attorneys with comparable experience.

The Court will therefore award Ventura a total of $40,476.80, including $39,990.60 in liquidated damages under the FLSA and $486.20 in costs. In light of the D.C. Circuit's recent opinion in Eley, however, it will defer ruling on the request for attorneys' fees and instead allow Ventura to submit additional evidence demonstrating that his requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.

## IV.     Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that [11] Plaintiff's Motion for Entry of Default Judgment is **GRANTED**. It is further

**ORDERED** that Plaintiff is awarded a monetary judgment against L. A. Howard Construction Company and Lazerrick A. Howard, jointly and severally, in the amount of $39,990.60 in liquidated damages and $486.20 in costs. It is further

**ORDERED** that Plaintiff shall submit, no later than October 13, 2015, any additional evidence related to his request for attorneys' fees.

**SO ORDERED.**

_____
CHRISTOPHER R. COOPER
United States District Judge

Date:   September 28, 2015